FILED IN OPEN COURT
ON 2|7|2023 (B
Peter A. Moore, Jr., Clerk
US District Court
Eastern District of NC

DGB

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:23-CR-35-D-RN

UNITED STATES OF AMERICA )
)
v. )
)
SANDA G. FRIMPONG )          INDICTMENT
)

The grand jury charges that:

## INTRODUCTORY ALLEGATIONS

1.    At all relevant times, Defendant SANDA G. FRIMPONG ("FRIMPONG") was an active-duty E-4/Specialist in the U.S. Army and maintained a Secret security clearance. FRIMPONG entered the U.S. from the Republic of Ghana in 2015 on a K1 Fiancé Visa. In December 2015, FRIMPONG married the K1 sponsor and the two later divorced in March 2018. FRIMPONG naturalized as a U.S. citizen in November 2018. At all relevant times, FRIMPONG was stationed at Fort Bragg and resided in Harnett County, both locations being within in the Eastern District of North Carolina.

## I.    The Money Laundering Scheme and Artifice to Defraud

2.    Beginning no later than on or about December 2019 and continuing until in or about February 2022, both dates being approximate and inclusive, in the Eastern District of North Carolina and elsewhere, the Defendant, SANDA G.

FRIMPONG, G.F., F.A., and B.S., along with others known and unknown to the grand jury, engaged in a series of schemes and artifices to defraud to obtain money and property by means of false and fraudulent pretenses, representations, and promises through the use of interstate wire communications and interstate mail. To execute the fraud, conspirators impersonated romantic love interests, diplomats, customs personnel, military personnel, and assumed other fictitious personas. As set forth in greater detail below, SANDA G. FRIMPONG knowingly utilized his personal bank accounts to receive or send money obtained via a variety of frauds, such as the false promise of a romantic relationship and/or gold.

3.     It was the object of the conspiracy that FRIMPONG and his co-conspirators conducted romance scams targeting victims in the United States and elsewhere for the purpose of enriching themselves and each other with the unlawful proceeds of such scams. It was further part of the conspiracy and scheme to defraud that FRIMPONG and his co-conspirators used false stories and promises to convince the victims to transfer money on their behalf.

4.     FRIMPONG and others used a variety of fraudulent scenarios to ensnare victims by earning their confidence, including promises of romance, sharing an inheritance or other riches, or other scenarios intended to fraudulently induce the victims to provide money or property to the conspirators. FRIMPONG and others assumed false identities to communicate with victims online.

5.     Having established relationships with the victims, the conspirators ultimately requested money for various untrue purposes, including travel expenses

2

and customs fees for gold. The conspirators directed the victims to wire transfer or deposit money into various accounts, including accounts established and maintained by FRIMPONG. Often, after the victims transferred money into the specified accounts, conspirators claimed more money was needed for various purposes.

6. It was further part of the conspiracy and scheme to defraud that FRIMPONG and his co-conspirators used drop accounts to receive, transfer, and otherwise convert fraudulently obtained funds from victims. It was further part of the conspiracy and scheme to defraud that FRIMPONG and his co-conspirators caused the victims to use the wires to transfer money to the drop accounts. Thereafter, the fraudulently obtained funds were disbursed by using wires to transfer money to other accounts, by initiating account transfers to other accounts at the same bank, by withdrawing sums of money, and by transferring funds to other individuals and entities.

7. It was further part of the conspiracy that FRIMPONG maintained numerous bank accounts and mobile payment services. The victims of these frauds, following the directions of known and unknown conspirators, mailed, wired, or deposited money into those accounts identified below and maintained by FRIMPONG. Upon receipt of the money, FRIMPONG typically utilized some of the proceeds for his own benefit, and transferred some of the proceeds to other accounts in the United States or overseas. At no time did FRIMPONG utilize the transferred funds for the purposes communicated to the victims.

3

| Financial Institution | Account No. (Last Four) | Registered Account Holder |
|---|---|---|
| Navy Federal Credit Union | *****3467 | Sanda G. Frimpong |
| Navy Federal Credit Union | *****9937 | Sanda G. Frimpong |
| JPMorgan Chase | *****0680 | Sanda G. Frimpong |
| BB&T | *****8845 | Sanda G. Frimpong |
| TD Bank | *****5836 | Sanda G. Frimpong |
| Wells Fargo | *****6517 | Sanda G. Frimpong |
| Bank of America | *****6024 | Sanda G. Frimpong |

The above banks and credit unions are insured by the Federal Deposit Insurance Corporation (FDIC) and otherwise meet the definition of a financial institution under United States Code, Chapter 18, Section 20.

8.     Funds in the accounts were rapidly transferred to co-conspirators, other individuals known to law enforcement or between accounts maintained by FRIMPONG. These transfers served no apparent valid legal business purpose. FRIMPONG retained a portion of the funds.

9.     FRIMPONG regularly communicated with other members of the conspiracy using WhatsApp Messenger ("WhatsApp"). WhatsApp is a free, cross-platform communication application available for Apple, Android, and Windows cellular telephones, as well as Mac and Windows PC computers. WhatsApp enables users to communicate securely over the Internet with end-to-end encryption using a variety of formats, including video, voice calls, and SMS (text) messaging. WhatsApp is owned by Meta Platforms, which houses WhatsApp's servers outside of North Carolina.     The conspirators also communicated using SnapChat, an instant messaging application whose principal feature is that pictures and messages are usually only available for a short time before they become inaccessible to their recipients.

4

## A.    Representative Money Laundering Example #1

10.    In one example, K.W., a widower, residing in North Rose, NY, was contacted in or around October 2020, by an online alias self-identified as "Catherine White."  K.W. engaged in a virtual relationship with "Catherine White" with the intent of meeting her in person in the future.

11.    After communicating back-and-forth for approximately one month, "Catherine White" claimed to need money to pay a holding fee to release gold that was held in Canada and inherited by Catherine White's deceased father.  White further claimed to have been detained by a Canadian customs officer named Sanda Frimpong and requested that K.W. wire money to Frimpong's JPMorgan Chase bank account ending in -0680 to pay duties on the gold "White" was attempting to bring into Canada.  To further perpetuate the scheme, "Catherine White" sent K.W. photographs of the purported gold bars, a photograph of a woman in handcuffs, and a counterfeit Canada Border Services Agency document.  "Catherine White" communicated with K.W. by text message and using the email address, comfortwhite10@gmail.com.  Google, LLC houses its servers outside of North Carolina.

12.    K.W. wired $6,500 (in two transactions of $6,100 and $400 each) on or about November 3, 2020 to FRIMPONG's aforementioned JPMorgan Chase account ending in -0680.  FRIMPONG then transferred $6,000 of that money using the money transfer service known as "Zelle" into his Navy Federal Credit Union (NFCU) account ending in -3467 in three transactions of $2,000: one each occurring on or about November 3, 2020; on or about November 4, 2020; and on or about November 5, 2020.

5

On or about December 28, 2020, K.W. wired $900 to FRIMPONG's aforementioned JPMorgan Chase account ending in -0680. On or about the same day, FRIMPONG then wired $982.87 from his aforementioned JPMorgan Chase account ending in -0680 in transactions of $100 and $882.87, using, respectively, the money transfer services known as "Western Union" and "Moneygram."

### B. Representative Money Laundering Example #2

13.     In another example, A.H., a resident of Lakewood, IL, met an individual in early 2021 with the online alias "Tom Tanner" on an online dating website. A.H. had recently divorced after 25 years of marriage. "Tom Tanner" purported to be from Illinois but deployed with the Army in Afghanistan. "Tom Tanner" asked A.H. to marry him, while delaying an in-person meeting.

14.     After gaining their trust, "Tom Tanner" claimed he had access to gold and diamonds but needed A.H.'s financial assistance to transfer the assets. "Tom Tanner" communicated with A.H. using the email address, tomtanner022@gmail.com or through Google Hangouts. Google LLC houses its servers outside of North Carolina.

15.     On or about September 8, 2021, A.H. received an email from an individual claiming to be Tanner's attorney, "Shawn Martins." "Shawn Martins" communicated with A.H. using the email address, advocacylawoffice66@mail.com.

16.     "Shawn Martins" told A.H. that he recently spoke to Tanner, and suggested the transaction could be easily accomplished by sending a cashier's check to Sanda Frimpong. "Shawn Martins" provided a Spring Lake, NC address, which

6

was associated with FRIMPONG's co-conspirator, B.S. The aliases "Shawn Martin" and "Tom Tanner" regularly communicated with A.H. through interstate email communications.

17. A.H. obliged and mailed a $50,000 cashier's check to "Tom Tanner" via UPS next-day air to the Spring Lake address. On or about September 9, 2021, FRIMPONG messaged with F.A. acknowledging delivery of the check at the Spring Lake, NC address.

18. On or about September 9, 2021, "Shawn Martins" emailed A.H. confirming receipt of the cashier's check, but noting the name on the check was spelled "Sandra" and thus needed to be corrected. "Shawn Martins" attached a photo of the check that was also exchanged between FRIMPONG and F.A., who was communicating with FRIMPONG from the Republic of Ghana.

19. On or about September 10, 2021, the cashier's check was deposited into FRIMPONG's NFCU account ending in -9937. On or about September 13, 2021, FRIMPONG wired $50,000 from his NFCU account ending in -9937 to Freddie Frim Motors located outside of the United States in the Republic of Ghana.

20. On or about September 20, 2021, "Shawn Martins" sent A.H. an email stating that it was going to cost $36,000 to change the ownership documents. On or about September 23, 2021, A.H. responded with concern stating she needed to talk to their financial advisor because there has been a lot of fraud related to military personnel.

7

21.     On or about November 10, 2021, "Tom Tanner" emailed A.H. two fraudulent documents relative to reassignment of 100 kilograms of gold bars and diamonds from Tanner to A.H.

22.     On or about December 16, 2021, "Shawn Martins" and "Tom Tanner" emailed A.H. listing FRIMPONG and B.S.' Spring Lake, NC address.  Martins reminded A.H. to make sure the name was spelled Sanda not Sandra.

23.     On or about December 17, 2021, A.H. sent an email to Martins indicating a cashier's check was on its way to FRIMPONG.  FRIMPONG exchanged messages with F.A. acknowledging receipt of the check, made out for $100,000.  On or about December 20, 2021, the check was deposited into FRIMPONG's NFCU account ending in -9937.

24.     On or about December 21, 2021, FRIMPONG wired $100,000 in two separate transactions of $50,000 each from his NFCU account ending in -9937 to Freddie Frim Motors and to S.F. (FRIMPONG's sister), both outside of the United States in the Republic of Ghana.

25.     A.H. sent FRIMPONG additional funds around late January 2022 that were deposited into FRIMPONG's NFCU account ending in -9937 in early February 2022.  FRIMPONG repeatedly exchanged messages with F.A. acknowledging the additional funds.

8

## II.    The Unemployment Assistance Scheme

### A.    Regulatory and Program Background

26.    Since 1935, The U.S. Department of Labor's Unemployment Insurance (UI) program has provided unemployment benefits to eligible workers who become unemployed through no fault of their own. This program ensures that at least a significant portion of the necessities of life -- most notably food, shelter, and clothing -- are met on a weekly basis while the worker seeks employment. UI beneficiaries who meet the requirements of the applicable state law are eligible for this temporary financial assistance. Each state administers a separate UI program within the guidelines established by Federal law. For example, in the State of California, the Employment Development Department (EDD) administers the UI program for residents and others physically performing work activities in California.

27.    Generally, regular UI claimants must be: 1) unemployed through no fault of their own; 2) able and available for work; 3) willing to accept suitable work; and 4) actively seeking work.

28.    In Response to the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which the President signed into law on March 27, 2020. The CARES Act provided over $2 trillion in economic relief protections to the American people from the public health and economic impacts of COVID-19.

29.    Prior to the enactment of the CARES Act, to be eligible for UI administered by EDD, a person must have been employed and worked in California

9

and received at least a certain amount of wages from an employer in the 18 months preceding his/her UI benefits claim. Because of this requirement, self-employed workers, independent contractors, and employees with insufficient earnings were not eligible to receive regular UI benefits. The CARES Act established a new program -- Pandemic Unemployment Assistance (PUA). Under PUA, states are permitted to provide PUA to individuals who are self-employed, seeking part-time employment, or otherwise would not qualify for regular UI compensation.

30.     Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker could qualify for PUA benefits administered by EDD if he/she previously performed such work in California and was unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19-related reason.

31.     EDD began accepting applications for PUA benefits on April 28, 2020. To make benefits available as quickly as possible, payments were issued in phases. If a claimant qualified for PUA benefits, the minimum payments depended on the claim's start date.

32.     A UI claimant could usually collect 26 weeks of regular state UI benefits. The CARES Act also established the Pandemic Emergency Unemployment Compensation ("PEUC") program, which provided up to 13 weeks of additional payments, for a total of 39 weeks of benefits. PEUC was available to persons who were or are fully or partially unemployed at any time between from March 29 and December 26, 2020. Persons with a regular UI claim, a PUA claim or a PEUC

10

extension filed between March 29 and July 25, 2020, also received Federal Pandemic Unemployment Compensation ("FPUC"), which was an extra $600 per week.

33.     Persons applying for PUA benefits did not need to submit any supporting documents to the EDD with their applications. Claimants entered their total income for the 2019 calendar year on the applications.

34.     Like regular UI claims, PUA claims could be filed online. When an individual filed a PUA claim online, EDD automatically maintained certain information regarding the filing of the claim. This information included the date and time the claim was submitted, the name of the person for whom the claim was filed, and the IP address of the computer, or ISP account, that was used to file the claim.

35.     A PUA claimant must answer various questions to establish his/her eligibility for PUA benefits. The claimant must provide his/her name, Social Security Number, and mailing address. The claimant must also identify a qualifying occupational status and COVID-19-related reason for being out of work.

36.     After it accepts a UI claim, including a claim submitted pursuant to the PUA program, EDD typically deposited UI funds every two weeks to an electronic benefits debit card administered by a federally insured financial institution, which the claimant could use to pay for their expenses. The electronic benefits debit card was sent via the U.S. Postal Service to the claimant at the address the claimant provided in their UI claim. Claimants could activate their debit card over the phone or online.

11

37.     When receiving UI benefits, including PUA benefits, a claimant must have completed a Continued Claim Form (DE 4581) and certify every two weeks, under penalty of perjury, that he/she remained unemployed and eligible to receive UI benefits.  EDD authorized and deposited payment to the electronic benefits debit card after it received the Continued Claim Form.

**B.     The Scheme and Artifice to Defraud**

38.     Beginning as early as April 2020, the Defendant, FRIMPONG, together with B.S., and others known and unknown to the grand jury, engaged in a scheme to defraud the United States Government by submitting false and fraudulent applications for CARES Act financial assistance relief in the form of unemployment insurance benefits.

39.     FRIMPONG coordinated with B.S. and others in the Republic of Ghana, to use stolen identities to apply online for federal CARES Act funds and unemployment benefits from several states, including California as well as Arizona, Georgia, Illinois, Kansas, Louisiana, Maine, Massachusetts, New Mexico, North Carolina, Texas, and others.  Many state agencies tasked with administering unemployment assistance disburse benefits through the issuance of physical debit cards, which were sent to the physical mailing address provided with the application. The cards were issued by financial institutions insured by the Federal Deposit Insurance Corporation (FDIC) and mailed by the United States Postal Service.

40.     FRIMPONG or others acting on his behalf would complete fraudulent applications online through the state agencies administering UI benefits, and input

12

a physical address, purportedly associated with the beneficiary. After the state administering the UI benefits mailed the debit card to that address, FRIMPONG or another member of the conspiracy, would physically retrieve the debit cards from the address. FRIMPONG often used B.S.'s address of 604 Eva Circle in Spring Lake, NC, which is located in the Eastern District of North Carolina.

41. C.M. lived in Gilroy, CA. C.M. never met FRIMPONG or applied for UI. FRIMPONG or others acting on his behalf used C.M.'s name, date of birth, and/or social security number without C.M.'s knowledge or permission to complete an online application for UI through the California EDD. Debit cards issued by Bank of America in C.M.'s name were mailed to 7271 Katella Ave., SPC 2 in Stanton, California, 90680. FRIMPONG or other members of the conspiracy acting on his behalf physically retrieved the debit cards, and transferred the funds into FRIMPONG'S JP Morgan Chase bank account ending in -0680 through interstate wire.

42. C.S. lived in Cypress, CA. C.S. never met FRIMPONG or applied for UI. FRIMPONG or others acting on his behalf used C.S.'s name, date of birth, and/or social security number without C.S.'s knowledge or permission to complete an online application for UI through the California EDD. Debit cards issued by Bank of America in C.S.'s name were mailed to 11901 176th St., Apt. 152 in Artesia, California, 90701. FRIMPONG or other members of the conspiracy acting on his behalf physically retrieved the debit cards, and transferred the funds into

FRIMPONG'S JP Morgan Chase bank account ending in -0680 through interstate wire.

43.     J.G., who died in February 2022, lived in Dale City, VA. FRIMPONG or others acting on his behalf used J.G.'s name, date of birth, and/or social security number without J.G.'s knowledge or permission to complete an online application for UI through the California EDD. Debit cards issued by Bank of America in J.G.'s name were mailed to 7271 Katella Ave., SPC 2 in Stanton, California, 90680. FRIMPONG or other members of the conspiracy acting on his behalf physically retrieved the debit cards, and transferred the funds into FRIMPONG'S JP Morgan Chase bank account ending in -0680 through interstate wire.

44.     In each instance, FRIMPONG or others acting on his behalf would transfer the funds from the debit cards into his J.P. Morgan Chase (JPMC) bank account ending in -0680.

## COUNT ONE
*Money Laundering and Aiding & Abetting*
*18 U.S.C. §§ 1956(a)(1)(B) and 2*

45.     Paragraphs 2 through 25 are re-alleged as factual allegations and incorporated by reference as if fully set forth herein.

46.     Beginning no later than on or about December 2019, and continuing until at least on or about February 2022, both dates being approximate and inclusive, in the Eastern District of North Carolina and elsewhere, the Defendant, SANDA G. FRIMPONG, aiding and abetting others, known and unknown to the grand jury, did knowingly engage and attempt to engage, in financial transactions affecting interstate and foreign commerce; through a financial institution; knowing the

14

property and funds involved in the transactions to be derived from unlawful activity; such proceeds having been derived from specified unlawful activities, that is Wire Fraud, in violation of Title 18, United States Code, Section 1343 and Mail Fraud in violation of Title 18, United States Code, Section 1341; and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, or the control of the proceeds of Wire Fraud and Mail Fraud.

All in violation of 18 U.S.C. § 1956(a)(1)(B).

## COUNT TWO
*Money Laundering and Aiding & Abetting*
*18 U.S.C. §§ 1956(a)(2)(B) and 2*

47.     Paragraphs 2 through 25 are re-alleged as factual allegations and incorporated by reference as if fully set forth herein.

48.     Beginning no later than on or about December 2019, and continuing until at least on or about February 2022, both dates being approximate and inclusive, in the Eastern District of North Carolina and elsewhere, the defendant, SANDA G. FRIMPONG, aiding and abetting others, known and unknown to the grand jury, did knowingly transfer and attempt to transfer monetary instruments and funds from inside the United States to or through a place outside of the United States, the Republic of Ghana; knowing that the monetary instruments and funds involved in the transfer represented the proceeds of some form of unlawful activity and knowing that such transfer was designed in whole or in part to conceal and disguise the nature, location, the source, the ownership, and the control of the proceeds of unlawful activity; such proceeds having been derived from various unlawful activities that

15

constituted offenses against the United States, violations of North Carolina criminal law, and violations of other state and federal laws, including, but not limited to Wire Fraud, in violation of Title 18, United States Code, Section 1343; Mail Fraud in violation of Title 18, United States Code, Section 1341; and Obtaining Property by False Pretense in violation of North Carolina General Statutes, Section 14-100.

All in violation of 18 U.S.C. § 1956(a)(2)(B).

## COUNT THREE
*Conspiracy to Commit Money Laundering*
*18 U.S.C. § 1956(h)*

49.  Paragraphs 2 through 25 are re-alleged as factual allegations and incorporated by reference as if fully set forth herein.

50.  Beginning no later than on or about December 2019, and continuing until at least on or about February 2022, both dates being approximate and inclusive, in the Eastern District of North Carolina and elsewhere, the Defendant, SANDA G. FRIMPONG and others, known and unknown to the grand jury, did knowingly combine, conspire, confederate, agree, and have a tacit understanding with each other to commit offenses against the United States, in violation of Title 18, United States Code, Sections 1956(a)(1) and 1956(a)(2); specifically, to

a.  knowingly engage and attempt to engage, in monetary transactions affecting interstate and foreign commerce; through a financial institution; knowing that the property and funds involved in the transactions to be derived from unlawful activity; such proceeds having been derived from specified unlawful activities, that is Wire Fraud, in violation of Title 18, United States Code, Section 1343 and Mail Fraud

16

in violation of Title 18, United States Code, Section 1341; and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, or the control of the proceeds of Wire Fraud and Mail Fraud; and

b. knowingly transfer and attempt to transfer funds from inside the United States to or through a place outside of the United States, the Republic of Ghana; knowing that the funds involved in the transfer represented the proceeds of some form of unlawful activity and knowing that such transfer was designed in whole or in part to conceal and disguise the nature, location, the source, the ownership, and the control of the proceeds of unlawful activity; such proceeds having been derived from various unlawful activities including but not limited to Wire Fraud, in violation of Title 18, United States Code, Section 1343, Mail Fraud in violation of Title 18, United States Code, Section 1341, and Obtaining Property by False Pretense in violation of North Carolina General Statutes, Section 14-100.

All in violation of 18 U.S.C. § 1956(h).

## COUNTS FOUR THROUGH TEN
*Wire Fraud & Aiding and Abetting*
*18 U.S.C. §§ 1343 and 2*

51.     Paragraphs 26 through 37 are re-alleged as factual allegations and incorporated by reference as if fully set forth herein.

17

## The Scheme to Defraud

52.    From approximately April of 2020 through approximately February of 2022, within the Eastern District of North Carolina and elsewhere, the Defendant, SANDA G. FRIMPONG, aiding and abetting others, knowingly devised and intended to device a scheme and artifice to defraud the State of California's unemployment assistance program, including the extended benefits made available during the COVID-19 pandemic; the United States; JP Morgan Chase, N.A.; Bank of America, N.A.; and the victims identified herein; and to obtain money and property by means of materially false and fraudulent representations and promises.

## Manner and Means

53.    The Defendant, SANDA G. FRIMPONG, carried out the scheme and artifice to defraud in the manner and means set forth in paragraphs 38 through 44.

## Use of the Wires

54.    On or about each of the dates set forth below in the Eastern District of North Carolina and elsewhere, Defendant, SANDA G. FRIMPONG, for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, caused to be transmitted by means of wire communication in interstate

commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date | Description |
|---|---|---|
| 4 | 9/10/2020 | Bank of America fund transfer of $5,000 in the name of C.M. to JPMC account ending in -0680 |
| 5 | 9/17/2020 | Bank of America fund transfer of $5,000 in the name of C.M. to JPMC account ending in -0680 |
| 6 | 10/06/2020 | Bank of America fund transfer of $1,200 in the name of C.M. to JPMC account ending in -0680 |
| 7 | 9/14/2020 | Bank of America fund transfer of $5,000 in the name of C.S. to JPMC account ending in -0680 |
| 8 | 10/13/2020 | Bank of America fund transfer of $1,036 in the name of C.S. to JPMC account ending in -0680 |
| 9 | 10/16/2020 | Bank of America fund transfer of $5,000 in the name of J.G. to JPMC account ending in -0680 |
| 10 | 10/30/2020 | Bank of America fund transfer of $5,000 in the name of J.G. to JPMC account ending in -0680 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS ELEVEN TO THIRTEEN
*Mail Fraud & Aiding and Abetting*
*18 U.S.C. §§ 1341 and 2*

55.    Paragraphs 26 through 37 are re-alleged as factual allegations and incorporated by reference as if fully set forth herein.

### The Scheme to Defraud

56.    From approximately April of 2020 through approximately February of 2022, in the Eastern District of North Carolina and elsewhere, the Defendant,

19

SANDA G. FRIMPONG, aiding and abetting others, with the intent to defraud, devised and willfully participated in, and attempted to do so, with knowledge of its fraudulent nature, the above-described scheme and artifice to defraud, and obtain money and property by materially false and fraudulent pretenses, representations, and promises.

## Manner and Means

57.     The Defendant, SANDA G. FRIMPONG, carried out the scheme and artifice to defraud in the manner and means set forth in paragraphs 38 through 44.

## Use of the Mail

58.     From approximately April of 2020 through approximately February of 2022, in the Eastern District of North Carolina and elsewhere, the Defendant, SANDA G. FRIMPONG, aiding and abetting others, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud and deprive, knowingly caused to be delivered by mail or private and commercial interstate carrier, according to the direction thereon at the place at which it was directed to be delivered by the person to whom it was addressed the following matter:

| Count | Approximate Date | Mailing |
|-------|------------------|---------|
| 11 | August - September 2020 | Debit card account number ending in -0258 in the name of C.M. mailed to: <br><br> 7271 Katella Ave., SPC 2 <br> Stanton, California, 90680 |
| 12 | August - September 2020 | Debit card account number ending in -5454 in the name of C.S. mailed to: |

20

| | | 11901 176th St., Apt. 152<br>Artesia, CA 90701 |
|---|---|---|
| 13 | August - September 2020 | Debit card account number ending in -6155<br>in the name of J.G. mailed to:<br><br>7271 Katella Ave., SPC 2<br>Stanton, California, 90680 |

Each of the above-referenced entries constituting a separate violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT FOURTEEN
*Conspiracy to Commit Wire Fraud and Mail Fraud*
*18 U.S.C. §§ 1341, 1343 and 1349*

59.     Paragraphs 26 through 37 are re-alleged as factual allegations and incorporated by reference as if fully set forth herein.

60.     From approximately April of 2020 through approximately February of 2022, in the Eastern District of North Carolina and elsewhere, the Defendant SANDA G. FRIMPONG, G.F., B.S. and others—known and unknown to the grand jury—did knowingly combine, conspire, confederate, agree, and have a tacit understanding with each other to commit offenses against the United States, to wit, Wire Fraud in violation of Title 18, United States Code, Section 1343; and Mail Fraud in violation of Title 18, United States Code, Section 1341.

### Objects of the Conspiracy

61.     *Wire Fraud*: It was a part and an object of the conspiracy that FRIMPONG and others, known and unknown to the grand jury, having devised the above-described schemes and artifices to defraud, and knowingly executed and attempted to execute the schemes and artifices to defraud, and to obtain money and

21

property by means of materially false and fraudulent pretenses, representations and promises, and attempting to do so, would and did transmit and cause to be transmitted by means of wire communication in interstate commerce, any writing, sign, signal, picture, and sound for purposes of executing said schemes and artifices in violation of Title 18, United States Code, Section 1343.

62.     *Mail Fraud*: It was a part and an object of the conspiracy that FRIMPONG and others, known and unknown to the grand jury, having devised the above-described schemes and artifices to defraud, and knowingly executed and attempted to execute the schemes and artifices to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and attempting to do so, did knowingly caused to be delivered by mail or private and commercial interstate carrier, according to the direction thereon at the place at which it was directed to be delivered by the person to whom it was addressed any matter or thing whatever to be sent or delivered by the Postal Service or private and commercial interstate carrier.

## Manner and Means

63.     FRIMPONG and others, known and unknown to the grand jury, carried out the conspiracy in the manner and means as set forth in paragraphs 38 through 44.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS FIFTEEN TO SEVENTEEN
*Aggravated Identity Theft*
*18 US.C. § 1028A(a)(1)*

64.     Paragraphs 26 through 44 are re-alleged as factual allegations and incorporated by reference as if fully set forth herein.

65.     From approximately April of 2020 through approximately February of 2022, in the Eastern District of North Carolina and elsewhere, the Defendant, SANDA G. FRIMPONG, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, to wit—the name, date of birth, and/or social security number of said other person—during and in relation to the crimes set forth in the corresponding count of this Indictment identified in the table below, which are felony violations enumerated in Title 18, United States Code, Section 1028A(c), knowing that the means of identification belonged to another actual person.

| Count | Victim Initials | Corresponding Counts | Predicate Offenses |
|-------|-----------------|----------------------|---------------------|
| 15 | C.M. | 4, 5, 6, 11 | Wire Fraud (18 U.S.C. § 1343) Mail Fraud (18 U.S.C. § 1341) |
| 16 | C.S. | 7, 8, 12 | Wire Fraud (18 U.S.C. § 1343) Mail Fraud (18 U.S.C. § 1341) |
| 17 | J.G. | 9, 10, 13 | Wire Fraud (18 U.S.C. § 1343) Mail Fraud (18 U.S.C. § 1341) |

All in violation of Title 18, United States Code, Section 1028A(a)(1).

23

66.     From on or about January 1, 2022 through on or about February 28, 2022, in the Eastern District of North Carolina and elsewhere, the Defendant, SANDA G. FRIMPONG, did knowingly and with intent to defraud possess fifteen or more devices, identified below—by associated financial institution, account number, and purported account holder—which were counterfeit and unauthorized access devices as defined in subsection (e)(2) and (e)(3) of Title 18, United States Code, Section 1029, to wit, banking and credit card account numbers that can be used, alone or with other access devices, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds, such access devices being lost, stolen, cancelled, and obtained with intent to defraud. This possession in the aggregate substantially affected interstate commerce because the access devices were instrumentalities of interstate commerce; because numerous purported account-holders were domiciled outside of North Carolina; and because the associated financial institutions were headquartered outside of North Carolina.

| Access Device No. | Institution | Last Four Digits of Account Number | Victim |
|---|---|---|---|
| #1 | BanCorp | -2442 | D.T. |
| #2 | BanCorp | -2252 | P.P. |
| #3 | BanCorp | -7960 | P.P. |
| #4 | Lincoln Savings Bank | -4462 | L.S. |
| #5 | Lincoln Savings Bank | -4158 | R.F. |

24

| #6 | Lincoln Savings Bank | -6510 | A.C. |
|---|---|---|---|
| #7 | Lincoln Savings Bank | -6077 | J.D. |
| #8 | Lincoln Savings Bank | -1980 | A.B. |
| #9 | Lincoln Savings Bank | -4797 | D.W. |
| #10 | Lincoln Savings Bank | -9959 | S.H. |
| #11 | Lincoln Savings Bank | -3628 | D.S. |
| #12 | CashApp | -9157 | S.H. |
| #13 | Fidelity Investments | -7158 | L.S. |
| #14 | Fidelity Investments | -7363 | A.L. |
| #15 | Fidelity Investments | -9070 | A.C. |
| #16 | Key Bank | -3598 | J.L. |
| #17 | U.S. Bank | -1430 | A.B. |

All in violation of Title 18, United States Code, Section 1029(a)(3).

## COUNT NINETEEN
*Access Device Fraud*
*U.S.C. § 1029(a)(5)*

67.     Paragraphs 26 through 44 are re-alleged as factual allegations and incorporated by reference as if fully set forth herein.

68.     From on or about September 1, 2020 through on or about October 31, 2020, in the Eastern District of North Carolina and elsewhere, the Defendant, SANDA G. FRIMPONG, did knowingly and with intent to defraud effect transactions with one  or more unauthorized access devices—debit cards issued by Bank of America, N.A. for fraudulently obtained UI benefits—issued to other persons (C.M.,

25

C.S., and J.G.) to receive United States Currency in excess of $1,000 during the calendar year of 2020, which did not exceed one year. The access devices were counterfeit and unauthorized access devices as defined in subsection (e)(2) and (e)(3) of Title 18, United States Code, Section 2019, to wit, banking and credit card account numbers that can be used, alone or with other access devices, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds, such access devices being lost, stolen, cancelled, and obtained with intent to defraud. This conduct substantially affected interstate commerce because the access devices were instrumentalities of interstate commerce; because the associated electronic transactions involved the transmission of wire communication in interstate commerce through FIDC-insured financial institutions like Bank of America, N.A. and JPMorgan Chase, N.A.; because the debit cards were mailed through the United States Postal Service; and because the victims and the accounts were domiciled in California or Virginia.

All in violation of Title 18, United States Code, Section 1029(a)(5).

## FORFEITURE NOTICE

Notice is hereby given that all right, title and interest in the property described herein is subject to forfeiture.

Upon conviction of any offense charged herein constituting "specified unlawful activity" (as defined in 18 U.S.C. §§ 1956(c)(7) and 1961(1)), or a conspiracy to commit such offense, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), as made applicable by 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the said offense.

Upon conviction of any violation of 18 U.S.C. §§ 1956, 1957 or 1960 charged herein, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

Upon conviction of any violation of, or conspiracy to violate, Section 1029 of Title 18 of the United States Code, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(B), any property constituting, or derived from, proceeds obtained directly or indirectly as a result of the said violation, or, pursuant to 18 U.S.C. § 1029(c)(1)(C), any personal property used or intended to be used to commit the said offense.

The forfeitable property includes, but is not limited to, the following:

27

Forfeiture Money Judgment:

a) A sum of money representing the value of the property involved in the money laundering offense(s) charged herein in Counts One through Three, in the amount of at least $365,662.00.

b) A sum of money representing the gross proceeds of the offense(s) charged herein in Counts Four through Nineteen, in the amount of at least $154,335.00.

Personal Property:

c) Approximately $47,590.35 in Funds seized from PNC Smart Access Card Account No. XXXXXXXXXXXXX3560, issued in the name of B.S.

If any of the above-described forfeitable property, as a result of any act or omission of a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

**REDACTED VERSION**
Pursuant to the E-Government Act and the federal rules, the unredacted version of this document has been filed under seal.

FOREPERSON

Date: 7 Feb 2023

MICHAEL F. EASLEY, JR.
United States Attorney

DAVID G. BERAKA
Assistant United States Attorney
Criminal Division

29